IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RICARDO BONILLA,

                                                                                                                  OPINION AND ORDER

                Plaintiff,

                                                                                                                   18-cv-460-bbc

    v.

DEBRA TIDQUIST AND BRADFORD MARTIN,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Ricardo Bonilla is proceeding on claims that defendants Nurse Practitioner Debra Tidquist and Dr. Bradford Martin violated his constitutional and state law rights by failing to provide him adequate medical treatment for his broken finger. Now before the court is defendants' motion for summary judgment, in which they argue that plaintiff cannot show that they acted with deliberate indifference or negligence to his broken finger. Dkt. #21. After defendants filed a motion for summary judgment, defendants' counsel notified the court that defendant Martin had died. Dkt. #27. The parties then filed a stipulation, stating that plaintiff would not seek to substitute Martin's estate as defendant and that the State of Wisconsin would pay any monetary relief award against Martin in this case. Dkt. #29.

      I will accept the parties' stipulation regarding Martin. As to defendants' motion for summary judgment, I will grant summary judgment to defendants on plaintiff's Eighth Amendment claim because plaintiff has failed to submit evidence showing that defendants acted with deliberate indifference to his broken finger. I will decline to exercise subject matter jurisdiction over plaintiff's state law claim, so I will dismiss that claim without prejudice to plaintiff raising it in state court.

1

From the parties' proposed findings of facts and responses, I find the following facts to be material and undisputed unless otherwise noted.

UNDISPUTED FACTS

Plaintiff Ricardo Bonilla was an inmate at Jackson Correctional Institution at all times relevant to this case. Defendant W. Bradford Martin was a doctor at Jackson Correctional, and defendant Debra Tidquist was an advanced nurse practitioner there.

On September 30, 2016, plaintiff jammed the middle finger of his right hand while playing softball. He was unable to bend or straighten his finger and he was in severe pain. His finger became swollen over the weekend, and he submitted a health service request on October 2. Plaintiff was seen by a nurse the next day, October 3. The nurse noted that plaintiff's finger was swollen and bruised and that plaintiff had a decreased range of motion. Plaintiff told the nurse that his pain was "throbbing" and that it ranged between 5 and 7 out of 10. (Defendants say the finger was not obviously deformed, but plaintiff says that it was obviously deformed.) The nurse consulted defendant Tidquist, who ordered an x-ray and a follow-up visit in the health services unit. The nurse splinted and taped plaintiff's finger to an adjoining finger and told plaintiff to apply ice, take ibuprofen and notify nursing staff if the finger worsened or did not improve. Plaintiff's finger continued to hurt despite the ice and ibuprofen.

On October 5, 2016, x-rays were taken of plaintiff's finger showing that plaintiff had an acute middle phalanx fracture. Tidquist reviewed the x-ray results, but did not assess plaintiff in person. Plaintiff told a nurse in the health services unit that ibuprofen was not relieving his pain, which was 10 out of 10 at that point, and that he wanted to see a doctor who could

2

increase his pain medication. The nurse responded that Tidquist had ordered a follow-up x-ray and that plaintiff should continue to ice his finger and take ibuprofen.

Another x-ray was taken on October 13, which showed no significant changes to plaintiff's finger. Tidquist ordered another follow-up x-ray. On October 18, plaintiff submitted a health service request stating that he was in severe pain. Plaintiff had an appointment with a nurse the next day. The nurse noted swelling but did not refer him to Tidquist, stating that he was on the list to see Tidquist in a couple of weeks. On October 29, plaintiff was given additional ibuprofen, which he used within three days.

On November 3, 3016, plaintiff had another x-ray taken, which showed only modest healing and a progressive loss of joint space. On November 8, plaintiff had an appointment with defendant Tidquist. She reviewed the x-rays and referred plaintiff's chart to defendant Dr. Martin, who recommended that plaintiff be seen by a hand surgeon. Tidquist then requested an orthopedic consult.

Plaintiff saw an outside orthopedic surgeon on November 14. The orthopedic surgeon noted that plaintiff was unable to flex the middle finger at the PIP joint, that his finger was grossly swollen and that plaintiff had pain with contact to the finger. The orthopedic surgeon recommended that plaintiff be seen by the clinic's hand surgeon for surgery within one week. The next day, defendant Dr. Martin wrote an order for plaintiff to be scheduled for surgery "within one week" with the hand surgeon.

On November 22, plaintiff was seen by the hand surgeon, Dr. Kevin Rumball. Rumball reviewed plaintiff's x-rays and examined his finger. Rumball noted a chronic fracture dislocation of the PIP joint with a loss of joint space. Rumball's notes state that after discussing available

3

treatment options, plaintiff opted for surgical intervention, specifically fusion, which would allow plaintiff to "return to most activities free of pain in the next month" and which had a "good likelihood of success." (Plaintiff says that Rumball told him that the finger had to be fused and could not be repaired fully because of the delay in treatment. However, Rumball's alleged statement is inadmissible hearsay because plaintiff is attempting to rely on an unsworn statement made outside of court to prove that the delay in seeking surgical treatment for his finger caused him harm. Therefore, I cannot consider Rumball's alleged statement. <u>Burton v. Kohn Law Firm, S.C.</u>, 934 F.3d 572, 583 (7th Cir. 2019) (hearsay statements are not admissible evidence at summary judgment)).

One week after the appointment with Dr. Rumball, on November 29, plaintiff submitted a health service request stating that he still had throbbing pain despite taking ibuprofen. A nurse responded in writing by stating that plaintiff was scheduled for an outside appointment and asking plaintiff if he had tried taking Tylenol from canteen in between ibuprofen doses. On November 30, plaintiff submitted a health service request to the health services supervisor, Tammy Maassen, stating that he had written to health services several times about his pain and that ibuprofen was ineffective. That same day, defendant Dr. Martin wrote plaintiff a prescription for Vicodin for five days. (Plaintiff says that when he tried to get the Vicodin from health services that Dr. Martin had ordered, nurses refused to give it to him, so he did not actually receive any Vicodin from December 1 through December 5, 2016. However, plaintiff has not put in evidence that either defendant was responsible for his not receiving the Vicodin.) A nurse saw plaintiff on December 1 and gave him a pillow to elevate his arm after surgery.

Dr. Rumball preformed surgery on plaintiff's finger on December 12, 2016. Plaintiff

returned to the prison that same day and received Vicodin at the prison from December 12 until December 20, 2016. During this time, plaintiff received Vicodin only at medication delivery times, which were 7:00 a.m., 12:00 p.m., 5:00 p.m. and 8 p.m. Plaintiff asked if he could receive medication before bed when his pain was worst, but Tidquist refused his request. On December 15, defendant Martin ordered additional ibuprofen for plaintiff to take, in addition to the Vicodin.

Plaintiff had follow-up appointments at the orthopedic clinic on December 20, December 27 and January 31, 2017. At the December 20 and 27 appointments, Rumball provided a number of recommended restrictions and also recommended that plaintiff continue occasional narcotic use four weeks post-operation. However, Tidquist disagreed with the recommendation that plaintiff continue narcotic pain medication more than one week post-operation and thought that plaintiff should be able to manage his pain adequately with non-narcotic medication. Her decision was based on her training regarding the risks of long-term narcotic use. Tidquist discontinued his Vicodin after December 20. Plaintiff filed health service requests on December 21 and 27, after his appointments, stating that he still had pain and asking why he could not have narcotics that his surgeon recommended.

At plaintiff's January 31, 2017 appointment with Dr. Rumball, Rumball noted that plaintiff rated his pain at zero out of 10 and that plaintiff was "very happy with how the surgery has gone." (Plaintiff says he actually reported his pain at 6 out of 10 and told Rumball he was upset because his pain had not been properly managed.)

Plaintiff has been able to participate in sports and other activities since his surgery, but plaintiff says that his finger is permanently bent at a 90 degree angle toward his hand and that

he cannot make a fist with his right hand.

OPINION

A.  Eighth Amendment

The Eighth Amendment's prohibition on cruel and unusual punishment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,'" including "grossly inadequate medical care." Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  To prevail on a claim based on deficient medical care, the plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition.  Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011).  The first element, an objectively serious medical condition, is satisfied if a physician has diagnosed the condition as requiring treatment, or the need for treatment would be obvious to a layperson.  Pyles, 771 F.3d at 409.  There is no dispute in this case that plaintiff's joint fracture was a serious medical condition that required treatment.

There is a dispute about the second element of plaintiff's claim, "deliberate indifference," which is a subjective standard.  Arnett, 658 F.3d at 751.  "Deliberate indifference" means that the officials were aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take reasonable measures to address it.  Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).  In cases in which a prisoner alleges that he received some treatment for his medical condition, but that the treatment was inadequate, the relevant question is whether the medical provider's actions were "such a substantial departure from

6

accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996). In such cases, courts must defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances. Pyles, 771 F.3d at 409. A "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." Id. But a medical provider may violate the Eighth Amendment if the provider prescribes a course of treatment without exercising medical judgment or that the providers knows will be ineffective. Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662–63 (7th Cir. 2016).

Evidence sufficient to create a jury question might include the obviousness of the risk from a particular course of medical treatment, the defendant's persistence in "a course of treatment known to be ineffective," or proof that the defendant's treatment decision departed so radically from "accepted professional judgment, practice, or standards" that a jury may reasonably infer that the decision was not based on professional judgment. Id. A medical professional's choice to pursue an "easier and less efficacious treatment" or "a non-trivial delay in treating serious pain" may also support a claim of deliberate indifference. Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010) (citation omitted).

Plaintiff contends that defendant Dr. Martin acted with deliberate indifference and negligence to his serious health needs by delaying his surgery and denying him pain medication. However, the undisputed facts do not support plaintiff's claim against Martin. Instead, the facts

7

show that Martin was not involved in the decision about how to treat plaintiff's injury initially. As soon as he was consulted about the injury, he referred plaintiff to a hand surgeon. When the orthopedic surgeon recommended surgery, Martin wrote an order that plaintiff receive surgery "within one week." Although there appears to have been a delay in scheduling the surgery, plaintiff has produced no evidence suggesting that Martin was responsible for the delay. As for pain medication, the undisputed facts show that Martin ordered Vicodin for plaintiff pre-surgery, immediately after receiving plaintiff's complaint about his pain. Martin also ordered Vicodin and ibuprofen for plaintiff after the surgery. There is no evidence that Martin was involved in the decision not to prescribe additional narcotics after that order expired. In light of this evidence, no reasonable jury could conclude that Martin acted with deliberate indifference to plaintiff's serious medical needs.

As for defendant Tidquist, plaintiff contends that she acted with deliberate indifference to his broken finger by failing to consult with Dr. Martin or refer plaintiff to an orthopedic surgeon sooner and failing to prescribe him additional narcotic pain medication. Again, however, plaintiff has failed to submit evidence sufficient to create a genuine dispute of material fact regarding whether Tidquist's actions constituted deliberate indifference.

Tidquist's initial decision to treat plaintiff's finger by immobilizing it, giving ibuprofen for pain, icing the injury and ordering a series of x-rays to measure healing progress, was based on her medical judgment that conservative treatment options could be successful. After the third x-ray showed no improvement, Tidquist consulted with Dr. Martin and referred plaintiff to an orthopedist. Plaintiff has submitted no evidence from which a reasonable jury could conclude that Tidquist failed to use her medical judgment or knew conservative measures would be

8

ineffective. He also has not shown that no competent medical provider would have attempted the same conservative treatment measures.

Finally, plaintiff has not shown that defendant Tidquist's decision to limit plaintiff's narcotic use amounted to deliberate indifference to his serious pain. The Court of Appeals for the Seventh Circuit has routinely rejected claims that are "based on a preference for one medication over another unless there is evidence of a substantial departure from acceptable professional judgment." Lockett v. Bonson, 937 F.3d 1016, 1024 (7th Cir. 2019). See also Burton v. Downey, 805 F.3d 776, 785–86 (7th Cir. 2015); Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996) (noting that "[t]he administration of pain killers requires medical expertise and judgment" and that their use "entails risks that doctors must consider in light of the benefits"). Although the orthopedic surgeon recommended that plaintiff receive occasional narcotics for a month after his surgery, Tidquist relied on her training regarding the risks of narcotic use and exercised her medical judgment in determining which pain medication to prescribe to plaintiff. No reasonable jury could conclude that Tidquist failed to use medical judgment under the circumstances. Accordingly, defendants Martin and Tidquist are entitled to summary judgment on plaintiff's Eighth Amendment claims.

B. State Negligence

Plaintiff is proceeding on state law negligence claims against defendants Martin and Tidquist. The general rule is that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial. 28 U.S.C. § 1367(c)(3); Burritt v. Ditlefsen, 807 F.3d 239, 252 (7th Cir. 2015). In this instance, I will decline to exercise supplemental

9

jurisdiction over plaintiff's state law claims because I am granting summary judgment to defendants on all of the federal claims. Plaintiff may refile these claims in state court, subject to the applicable Wisconsin statute of limitations.

ORDER

IT IS ORDERED that

1. The stipulation filed by plaintiff Ricardo Bonilla and defendants, dkt. #29, is APPROVED by the court.

2. Defendants Debra Tidquist's and Bradford Martin's motion for summary judgment, dkt. #21, is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to plaintiff's Eighth Amendment claims against Tidquist and Martin, and the motion is DENIED in all other respects.

3. Plaintiff's state law negligence claims against Martin and Tidquist are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

3. The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 23d day of January, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge